All right. We'll turn to Vangorden v. Second Round, Limited Partner. Good afternoon. May it please the Court, my name is David McBain. I represent the Appellant Yvette Vangorden. She appeals the dismissal of her claim under Rule 12b-6. In 2011, she settled the credit card debt that she had. She had some outstanding debt with the company Synchrony. Five years later, however, the Appellee's Second Round Limited Partnership sent her a done letter stating that they had purchased the debt and that they were now $1,300. She brought an FDCPA claim alleging that the defendant violated 1692 E-2A, which makes it a violation of the FDCPA, the Fair Debt Collection Practices Act, for any debt collector to falsely represent the character, amount, or legal status of any debt. FDCPA creates private right of action for consumers against whom a debt collector has violated one of its provisions to bring an action for actual damages, statutory damages up to $1,000, and their reasonable attorney's fees and costs. She also alleged a claim under 1692 E-10, which makes it a violation to use any false representation or deceptive means to collect or attempt to collect any debt, and 1692 F-1, which says it's an unfair, unconscionable collection practice to attempt to collect an amount of debt that, or any amount that is, unless it's expressly authorized by the agreement creating the debt or permitted by law. The district court held that because Second Round had included the dispute notifications required by 1692 G, it essentially was entitled to rely on what the creditor had told it about the debt. And therefore, even though she essentially alleged that the representation was false, and even essentially accepting as true that the representation was false, that they were not liable under the FDCPA. Now, this appeal asks the court essentially to decide between two views. One is the view of the Third Circuit and the Fourth Circuit that says there's no pre-dispute or pre-lawsuit dispute requirement in the FDCPA, and that would thwart the intent of Congress. And the other is the view that there is such a requirement, and it's a view held by a handful of district courts that have dismissed cases on these types of cases, on this line of reasoning. Now, before I get into why this Court should adopt the view of the Third and the Fourth Circuit, I just want to point out the fact that Ms. Van Gordon did, in fact, state a claim under the plain language of the statute, based on the statutes I just read. She alleged that the, that she was a consumer, that Van Gordon is a debt, or excuse me, that second round is a debt collector, that they attempted to collect a debt from her, that she had paid off this debt, and that therefore it was settled, and no longer, it was no longer a debt that she owed, and then that they represented to her that she owed a debt. And so that, therefore, was a false representation about the legal character, or excuse me, about the legal status, the character, and the amount. And then the second part I wanted to point out is that under the Iqbal-Twombly standard, she gave sufficiently specific allegations. There's meat on the bones here. She presented the settlement offer showing that Synchrony had offered to resolve her debt for a certain amount if receiving, if it received payment by a certain date, and then she alleged that she made payment in that amount on a specific date that was prior to the date specified in the settlement offer. So the reason I point that out is because I think where the district courts have gone astray is, in particular, Bleich in 2000, was issued in 2002, I think it was picking up on case law that had come down before the Iqbal-Twombly standard was announced, where it said a debtor can't just say, you know, here are all the elements of an FDCPA claim, and the debt's invalid, and then bring a lawsuit. And Iqbal-Twombly got rid of that and said, you've got to make it not just conceivable that this could have happened, but explain some, put some meat on the bones so it's actually plausible and that this is not just reciting the elements of a claim and then stating some fact generically. I think that the, and the reason I say this is because there are a number of quotes from these cases that the district courts have been following that say, an allegation alone that a debt's invalid is not sufficient to state a claim under the FDCPA. Or the debtor's mere claim or representation that a debt was invalid is not sufficient to survive the summary judgment stage, for example. And it's important to keep, hone in on that word, an allegation alone. This wasn't just an allegation alone, right? This definitely gets past the Iqbal-Twombly standard in terms of the specific, the specificity of her complaint. So tell, so as I understand it, an attempt to collect a paid debt, a debt that's already been paid without more, isn't a violation, right? Simply attempting . . . No, it absolutely is a violation. This is the number one reason that the FDCPA was passed. In, this court said a particular goal, in Hart, it's 797 F3rd 219 at 223, a particular goal was to address the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. This is, and that's, that's quoting legislative history. So that absolutely is a violation. That's one, that's one of the primary violations one can do. What I'm pointing out is that I think that, I think that there have been cases and there have been times in the federal district courts where a consumer or a debtor will say, well, this debt's not valid. And, aha, I have this FDCPA that gives me a claim. And the, and so there have been cases that say you can't just allege that it's invalid alone and, and have an FDCPA claim. But I think that really gets more to the Iqbal-Twombly issue. Why do you claim it's invalid? What about the debt isn't, you can't just say, well, this isn't valid, it wasn't fair. You know, and think you're going to go to trial over the issue of whether it was valid in the plaintiff's mind or not. And, and, and what, what you're alleging is that it's invalid here because it was already paid and that's enough to make out a claim. Yes, that's absolutely. It's a huge, it's a big part of what the act is. Now, the, the notion that the, that because there is a dispute procedure, that the intent of the FDCPA was to make initial communications to immunize them somehow, is just, there's no basis in the statutory text for this. And the, the third and fourth circuit have both said that it would undermine the, the purpose of the FDCPA. They, they said that it would be inconsistent with the FDCPA's goal of ensuring debt collectors act responsibly. So if we just say that you're immune from the first communication, it's going to make it more likely that debt collectors don't make sure their creditors are giving them good information. It's going to make it more likely that they've done the wrong people or done people about debts that have already been paid. I'd like to reserve the rest of my time for rebuttal. Thank you. May it please the court. Your honors, we're here simply because my client purchased a debt from another entity and thereafter sent the plaintiff, Mrs. Van Gordon, a letter related to that debt. This wasn't just any debt collection letter, however. This was a significant letter because it was the first and only communication by my client's second round to the plaintiff, Mrs. Van Gordon. It was similarly significant and important because within this letter, my client's second round provided the plaintiff with important, statutorily required information and rights that the consumer enjoyed. Pursuant to 1692G of the FDCPA, which is sometimes referred to as the validation process. Why isn't that all appropriate to an affirmative defense that you might be able to raise on this? But not to whether or not the plaintiff states a claim. I assume that you're addressing the bona fide error affirmative defense, your honor. And I would respond by saying initially that the bona fide error only arises if there has been a violation. And what we're suggesting is this letter and the fact that it allegedly misrepresented that the debt was owed when it was in fact paid does not. It does not substantially. Allegedly does. It does represent that there's a debt owed. Now it then provides the consumer with a way of challenging that. But as the third and fourth circuit have said, the statute isn't intended to let you make all kinds of claims. I'm not suggesting your client was acting except bona fide. But it doesn't allow a collector to make all kinds of claims and then put the burden on the consumer to dispute it. So I'm not sure I understand why there's not a claim and then a method for raising an affirmative defense. Sure, your honor, and certainly our argument number one isn't that a consumer, and this is not what the district court held either, that a consumer has to dispute a debt before they're able to pursue an FDCPA allegation. That's not what the district court held. That's not our argument. In fact, even if this consumer had disputed the debt upon receiving the letter in issue within the 30 day period, which she's provided to dispute it, and then the very next day filed the instant lawsuit that brings us here today, I would still be making the same argument that the dispute doesn't change anything. It doesn't retroactively now make that letter that was sent before somehow false and misleading under the FDCPA. But there's no safe harbor in the statute for sending out a letter like this, is there? I'm not suggesting that there's any safe harbor, your honor. I'm suggesting that Congress intended when it drafted the FDCPA, and as my counterpart pointed out, one of the goals was to address consumers receiving collection notices on debts that might have been invalid. And as this court did identify in heart, which my counterpart brought up, a way that the Congress sought to address that goal was by drafting 1692G, the validation process. And what the validation process does is it allows a collector to provide information to a consumer to allow the consumer to identify the debt. For example, the statute requires that the collector provide the current creditor of the debt as well as the amount of the debt, from which the consumer can identify the debt and then determine whether or not the collector's information is accurate. But the statute also says that if you make a false statement about an amount related to the status of a debt, you've got a claim. Why isn't, I mean, if you parse the statute, why isn't there a claim here? There was a false statement about an amount related to the status of a debt. I think the answer to that, your honor, is two part. Number one, Congress, my interpretation of the FDCPA, and I believe that the language of the statute reflects this, Congress did not intend that the allegation here that's brought, and we're only talking about this particular allegation, not painting with a broad brush, the allegation alone that this particular letter that contained the validation notice, and the only allegation is that the debt was on the note that was represented in the letter. Congress did not intend that that was going to be abuse of collection practices. Where do we look to find that, as long as there's a validation notice, you can say you can identify a debt without consequence? Where do we look for that? Your Honor, and I believe, I don't think it applies in every situation. For example, let's say- You said that's what Congress intended, that's how we should construe the statute. Now, are you relying on text? Are you relying on something else? Where do we look for that construction of the statute? The construction of the FDCPA allows us to make two presumptions, and I will point out where in the FDCPA I see those. It allows us to presume that under the text of the FDCPA, that a debt collector is permitted to presume, initially, in the early stages of the collection process, the validity of the debt at issue, subject to being told otherwise, pursuant to the validation process. Where is that in the statute? In 1692G, Your Honor, well, also what's absent from the statute. What's absent from the statute is the statute does not regulate creditors. Therefore, creditors have no liability under the statute and no incentive to ensure that what they're providing, the information they're providing along with the debts that they're either selling or assigning are valid. On this same token, the FDCPA, however, does not require a debt collector to proactively validate a debt before it commences collections. So you have a situation where creditors are not regulated by the FDCPA, and validate and confirm the information before they commence collections. Furthermore, the notice to dispute the debt is not even required to be provided to a consumer until after collections commence. And even then, the duty to validate the debt only arises if the consumer so disputes the debt within the 30 day period. And I- Why isn't your duty to inquire into the validity of the debt established by the fact that if you state to the consumer that he owes it and tries to collect on it, you're going to be liable? So the whole scheme suggests that you've got a burden to be sure that before you send a consumer notice, you've made sure that there is, in fact, a debt. Well, Your Honor, I would argue that that's not, that Congress intended that the dispute process provided by G would serve that purpose. It would allow for a collector to provide information outside of any duty prior to sending this letter to validate the debt. It would allow them to provide information to the consumer from which the consumer can then say, do I recognize this debt and do I owe it? And that's what happened in this case. The plaintiff was able to recognize from the information provided, I recognize this debt, this was my old synchrony debt, and I recognize that I also paid that. And then the letter further, what this does is it allows then the consumer to communicate to the collector and say, I'm disputing this debt. And when the dispute happens, what does the collector have to do? They have to cease collections, unless and until they validate the debt. Well, or unless the consumer pays the debt, right? Or unless the consumer pays it for a second time. So suppose I'm a debt collector and I have some understanding that the elderly will sometimes get a letter like this and be so frightened that they'll pay the debt or won't remember paying it because they're elderly. And so I send this letter out with all the bells and whistles in the letter to everyone, and I collect some money from it. How do we know that's not the case here, since this is at the pleading stage? And why shouldn't the claim survive the pleading stage and be, as Judge Radjic suggested earlier, at risk for the summary judgment mill and not the pleadings mill? And I think this gets back to what you were asking earlier, and I didn't get an opportunity to follow up on it. You suggested, and it has been suggested, that this is, it's a false statement. That the letter reflects that the debt is owed and it is not. However, again, we have to remember under the FDCPA, it's not just a false statement that is actionable. It has to be able to mislead the least sophisticated consumer. And to do that, it has to confuse the least sophisticated consumer as to the nature of the debt or the consumer's rights under the FDCPA. So what about the elderly folks in my example? Well, I would suggest that Congress drafted the 1692G language that explains if you dispute this debt, if you do not believe that you owe it, here's what you can do and here's what the result will be. And the courts have interpreted that circuit-wide, that that disclosure has to be put in verbatim. So I think we have to assume, number one, that the least sophisticated consumer is expected to understand the language in the letter, the validation process. Therefore, if a consumer looks at an elderly consumer, the least sophisticated consumer, they look at a letter and it has a debt. And it has the appropriate information in it related to the characteristic of the debt, i.e. who the creditor is, partial account number was provided in this. Other information, so you have two results with an elderly person, a least sophisticated consumer. They look at that and they go, either I recognize this and I don't owe it, or they go, I don't recognize this. Isn't that itself a question of fact, how the least sophisticated consumer would understand this communication? Well, I think it would be a question of fact if it was based upon whether or not the plaintiff was misled, but the- It's an objective standard. The standard is not the plaintiff, it's the- Yeah, okay, so we've now posited to you that a consumer might misunderstand, and you've said no, it wouldn't. But I'm asking you, don't we have a factual dispute that would have to be decided as to how the least sophisticated consumer, being told in one paragraph that they owe $1,365 and some change, and should pay it in full by using the attached remittance, would understand that in light of the second paragraph, which tells them they can dispute it? It's the effect that the, it's the purpose and the effect of the latter part of the letter, Your Honor, which is to explain to the consumer, and it says, if you dispute that you owe this amount, if you don't owe this amount, here's what you may do, and here's what will happen. And the fact that Congress drafted that language and it's required to be in every letter, we have to presume that the least sophisticated consumer will understand what that language means. That means that although it says up here that this is a debt that the collector is suggesting I owe, if I disagree with that for whatever reason, because I don't believe I owe it, because I don't recognize it, because the debt itself is not as foreign to me, I don't recognize it, here's what I can do. I can dispute it. The cases you rely on are summary judgment cases. Do you have any 12B6 cases? Those cases, I do not have any, Your Honor, but I would say that those are, the fact that they were on summary judgment is inconsequential to this argument. If you look at the two cases from the Eastern District of New York, Bletch and Huebner, that the district court here relied upon. They were decided on summary judgment, but they were decided based upon the four corners of the letter and the allegation that that was disputed. There were no other facts that came in related to anything else that the courts considered. They also didn't find the need to get to the bona fide error, and they didn't consider facts related to that. So if you look at those cases, you'll see that although it was summary judgment, it might have been that nobody raised the argument or wanted to pursue a motion to dismiss. In your interpretation of what it takes to state a claim, how would the affirmative defense ever come to the fore? So for example, let's say, again, I'm not, or we're not arguing, my client's not arguing that because you throw in the 1692G language, all of a sudden you can do whatever you want in the letter. This is a specific claim related to the amount of debt. Let's say, for example, that my client is a debt collector and ABC Bank hires them to collect the debt. In the letter, the initial letter, they're supposed to disclose ABC Bank says you owe $500. Let's say they put in there XYZ Bank instead and say you owe $500. I think there, because they've not provided the appropriate creditor, that's an issue where the consumer looks at that and they wouldn't be able to identify the debt. They might remember having a debt in $500 with another bank, for example, ABC Bank, but they wouldn't be able to remember or recognize that they had a debt with XYZ. And therefore, because they wouldn't be able to identify it, I believe that that type of a claim would state a claim and it would require the debt collector in that issue to then say, okay, well, we misrepresented the name of the creditor here, but that was a mistake. Although we have policies in place to prevent such a mistake, an error happened. Somebody didn't code the file right, and this letter went out with the wrong name of the creditor in it. Thank you, Mr. Moore. Thank you. Mr. McDevitt has reserved some time. Thank you, Your Honor. The first thing I just wanted to address was regarding the application of the least sophisticated consumer standard. It's not a question of fact, there's a circuit split on that. In the Second Circuit, though, it is interpreted as a matter of law, so I just wanted to clarify that. But I wanted to also read a quote from Jacobson, it's F-16, F-3rd, 85 at 90. It's a Second Circuit case from 2008, which explained that the least sophisticated consumer standard is an objective test. Meant to protect debtors from unreasonable constructions of their communications. This is not an unreasonable construction of the interpretation. It's not a bizarre, idiosyncratic interpretation of what they're saying. Your opposing counsel agreed that this was an objective standard. So what I'm saying is that it's, to say that, well, any reasonable person getting this letter would know, well, I'm allowed to dispute it. So it doesn't necessarily mean that I owe it. But that somehow shields them from liability, or that the court should interpret the FDCPA in a way, as to not protect the people that Judge Blardo pointed out, that might just pay it because they don't remember that they paid this debt. In this case, the debt was paid through a law firm that was helping her settle her debts. Maybe she thinks her attorneys didn't actually pay it. We'll find out if the attorneys did pay it, if we get back to remand and have some factual development. The next thing I wanted to point out was about the duty or obligation to investigate the debt. There's no express procedural requirement that they do so, but they- And there have been courts that have found that a defendant has no such duty, right? They don't have a duty to do so as a matter of procedure. They don't have to do so in every event. But if they want to avoid making false statements and avoid attempting to collect debts that are not a valid, they probably should do something about this. And that is the ultimate purpose of the statute. The FDCPA- So these cases that hold that a defendant has no such duty to verify a debt before sending a collection letter, they're wrong? Well, Clark v. Capital Credit and Collection Services said there's no independent duty to investigate or that they were entitled to rely on the creditor's representations. That was with respect to the actual verification of the debt under GB. It then went on to say that doesn't mean that they didn't violate 1692E for making a false statement about the amount. And that the evidence at summary judgment showed that they were not necessarily relying reasonably on the creditor's representations. So there's no duty to do anything beyond listen to what the creditor gives you and then pass that off to the plaintiff. Although I would add that the Fourth Circuit disagrees about that, but I don't have the citation. The last thing I want to point out is that both the Third and Fourth Circuit found compelling the fact that there is no, the Fourth Circuit said, put simply, had Congress intended for a debt collector's liability under the FDCPA to hinge upon a debtor's compliance with validation provisions found in 1692G, we suspect that it would have done, would have, that it would have so indicated with conspicuous language to that effect. And there is no conspicuous language. Basically, if Congress wanted that to be a part of how the FDCPA worked, they would have made that how it worked. That's not how it works. It would have put a safe harbor in the statute. Exactly, exactly. It would have put a safe harbor. Right. The safe harbor here is the bona fide error provisions. And if their reliance on what the creditor gave them was reasonable and done in, if their error was bona fide and unintentional and- So where are you going with this if we reverse? I mean, aren't they going to get a dismissed and summary judgment for bona fide error? I don't think so. When there's smoke, there's fire. I have a, I suspect that there's, that these letters went out to a lot of people and that this was not properly handled in a big way. And what are the cases that you would have us rely on? I would have you rely on Russell versus Absolute Collection Services. It's Fourth Circuit 763F3, 385. And McLaughlin versus Phelan, Hallinan and Schmeig, LLP 756F3, 240. What circuit is that? That's the Third Circuit. Okay. Thanks very much. Thank you. We reserve decision.